FORET, Judge.
This appeal arises out of a suit filed by plaintiff, Central Gulf Electrical Contractors, Inc. (Central Gulf), against the defendants, M.P. Dumesnil Construction Co., Inc. (Dumesnil) and its surety, Continental Casualty Company, for sums allegedly due plaintiff under a contract to perform electrical subcontracting work on the St. Martin Water Wells Project in St. Martinville, Louisiana. Plaintiff demanded its 10% re-tainage fee of $13,252.80, plus $6,870.38 for extra work performed. The defendant, Du-mesnil, answered and reconvened, seeking recovery of the delay damages assessed against it by the City of St. Martinville in the amount of $26,250.00 and recovery of $3,049.79 paid to remove a lien filed by BIF, a manufacturer of electrical equipment. The trial court rendered judgment in favor of the plaintiff, awarding its re-tainage fee against Dumesnil and Continental Casualty, but rejected plaintiff’s demand for extras and rejected the defendant’s reconventional demand. The defendants have appealed the judgment, and plaintiff has answered, seeking an increase in the award to include the originally prayed for extras. The issues presented by the defendants are that:
(1) The trial court erred in failing to recognize defendant’s right of offset with respect to the lien paid on behalf of Central Gulf Co.;
(2) The trial court erred in failing to recognize defendant’s reconventional demand for delay damages; and,
(3) The trial court erred in awarding judgment against Continental Casualty Company.
We affirm the judgment of the trial court.
*1150 The defendant, Dumesnil, as general contractor, was awarded the contract to construct the St. Martin Water Wells Project by the City of St. Martinville on October 26, 1979, and was issued a performance bond by the defendant, Continental, pursuant to the requirements of LSA-R.S. 38:2241 et seq.; the Public Works Act. Pri- or to the opening of bids on October 1, 1979, plaintiff was contacted about submitting a bid on the electrical work for the project. Dumesnil, being the successful low bidder, notified plaintiff by phone that it was the successful low bidder for the electrical work. The official notice to proceed was issued on November 8, 1979.
Under the terms of the contract regarding the electrical specifications, the electrical subcontractor was required to use BIP parts or parts of that quality since the parts were custom-made. Plaintiff chose to use BIF and issued a purchase order to them for equipment as early as October, in order to speed the project along, even though plaintiff did not receive its official purchase order from Dumesnil until March of 1980. The project was to be completed originally in 200 days (an extension of 45 days was later granted), but in fact it took 420 days to complete the project due to many problems and delays. Plaintiff did not begin its work until September of 1980 due to delays in shipping the electrical equipment and did not complete its work on the project until March of 1981, again due to delays in the shipping of parts. The project was finally 99% completed in April of 1981.
In July of 1981, BIP filed a lien against the project for sums allegedly due it by the plaintiff. Suit was eventually filed by BIP against plaintiff, and in January of 1982, during the course of that litigation, Dumes-nil paid BIP in order to secure a clear lien certificate to collect its retainage fee held by the City. Plaintiff had notified defendants in January of the claim and ongoing litigation and requested that they not pay the lien as the amount owed was in dispute. The suit against plaintiff was subsequently dismissed, and this suit was filed in February of 1982.
The trial court relied primarily on the testimony of the plaintiffs president, Aymar Bonin, in concluding that, under the contract between Dumesnil and plaintiff, a retainage fee of $13,252.80 was owed to the plaintiff. We find no error in this finding of the trial court.
In addition, the trial court found that defendant, Dumesnil, had failed to prove that it was legally entitled to the offset claimed for payment of BIF’s lien and for delay damages. The evidence and testimony presented by the parties do not positively identify and establish precisely all of the items owed which were represented by the lien. The purchase order given by plaintiff to BIP was for $31,058.00. Plaintiff paid $30,178.00 to BIP after certain credits were given. Plaintiff maintains that it was not liable to BIP on a certain invoice showing $2,102.29 billed for labor and a $142.00 part. Plaintiff testified that part of the labor was owed to it by BIP under the contract and part of the amount of the lien was for extras billed by Dumesnil to the City of St. Martinville, of which some were paid. There is clearly a dispute with regard to the amount liened, and defendants failed to prove that the amounts represented by the lien were in fact lienable and owed by plaintiff. Defendants had an opportunity to prove BIF’s claim, but failed to do so. The defendants failed to prove that plaintiff was responsible for delays charged to Dumesnil or that plaintiff was legally responsible for the payment of delay damages. We find no error in the judgment of the trial court with respect to these claims.
As to the claim that judgment was improperly rendered against Continental Casualty, we find no merit in it.
In the case of Coating Specialists, Inc. v. Pat Caffey Contr., Inc., 194 So.2d 380 (La.App. 4 Cir.1967), writ denied, 250 La. 633, 197 So.2d 652 (1967), the Court dealt with the issue of the solidary liability of a contractor and its surety. The Court found that LSA-R.S. 38:2247 provided specific au *1151 thority for holding the surety primarily liable.[1]
The court in Coating Specialists said, at page 386:
“The proceedings on a public works claim are of course governed by the statute, and Section 2241 states that the surety is bound “with an additional obligation for the payment by the contractor or subcontractor for all work done” etc. There is no doubt that where suit is brought against the prime contractor, the claimant is not relegated to recovery against one before the other, but that the surety and the contractor are each primarily liable....”
A subcontractor is to be treated no differently with regard to a claim against the contractor as a materialman or supplier. The statutory bond required under the Public Works Act is for the subcontractor’s benefit and protection as well as those having no direct contractual relationship with the contractor, such as providers of material or supplies.
With respect to the plaintiffs claim for extras which were not awarded to it in the judgment of the trial court, we agree that the plaintiff failed to establish that Dumesnil was to be responsible for the payment of any extra work performed by plaintiff.
Accordingly, the judgment of the trial court in favor of plaintiff, Central Gulf Electrical Contractor, Inc. and against the defendants, M.P. Dumesnil Construction Co., Inc. and Continental Casualty Company, in the amount of $13,252.80, and dismissing all other claims of the plaintiff and defendants is hereby affirmed.
All costs are to be borne by appellants.
AFFIRMED.

. "§ 2247. Construction of Part
Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after maturity of his claim, which said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any person having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall record his claim as provided in R.S. 38:2242 or give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.”